UNION CEMETERY ASSN. *v.* CITY OF COLUMBUS.

(No. 228,648.   Decided March 6, 1967.)

Common Pleas Court of Franklin County.

*Mr. Hugh E. Kirkwood* and *Mr. Robert Kennedy*, for plaintiff.
*Mr. William Melvin*, for city of Columbus.
*Mr. Harry R. Paulino*, for defendant State Director of Highways.

MITCHELL, J., of Jackson County, sitting by assignment.

MITCHELL, J.   This action was begun by the Union Cemetery Association on November 10, 1966, against several defendants but basically against the city of Columbus and the State Director of Highways praying that the defendants be enjoined from constructing a four lane limited access highway across its property pursuant to defendants' power of eminent domain.

Certain evidence was submitted to the court by way of testimony and exhibits.   The parties agree that the basic facts are not in dispute and that the principal issues in the case are legal in nature and involve the construction and interpretation of certain provisions of the Ohio Constitution, *i. e.*, Article I, Section 19, and Article XVIII, Section 3.   Also involved is the in-

terpretation and application of Section 1721.01, Revised Code.

Before discussing these constitutional and code provisions, it would be helpful to know some of the background concerning this proposed freeway.

In June of 1965, the journal of the State Highway Director revealed an intention to construct a four lane limited access freeway connecting the innerbelt with I-270 or the outerbelt. The proposed route was approximately that now occupied by State Route 315, commonly known as Olentangy River Road. The route of this highway from its inception was vociferously challenged by several vested interest groups, i. e., Ohio State University, Riverside Hospital, Industrial Nucleonics Corporation, and a committee of citizens formed to protect the scenic beauty of Olentangy River Road.

In January 1966, the city of Columbus passed Ordinance No. 144-66 consenting to the construction of the freeway under the supervision of the Director of Highways and proposing to cooperate with the state by providing certain preliminary construction plans and participating in the construction in a minor financial way. Also the city, after the construction of the new highway, proposed to vacate that portion of Old State Route 315 lying adjacent to Ohio State University.

On May 3, 1966, a referendum election was held on Ordinance 144-66. The vote was 25,675 for and 25,495 against and, therefore, the referendum failed by 180 votes.

Subsequently, E. S. Preston and Associates were hired to align and prepare construction plans for this highway. The final of several alignments apparently has resulted in the present alignment which bisects the plaintiff's cemetery and renders approximately one third of it useless for such purposes.

The court will now turn to a consideration of the legal issues. The plaintiff maintains that its lands are exempted from appropriation by virtue of Section 1721.01, Revised Code, which reads in part as follows:

"A company or association incorporated for cemetery purposes may appropriate or otherwise acquire, and may hold, not more than six hundred forty acres of land which shall be *exempt* from execution, *from being appropriated for any public purpose,* and from taxation, *if held exclusively for cemetery or burial purposes, and with no view to profit.*

"Lands of cemetery associations *within* but *contiguous* to their boundaries *not containing graves that are in use as such*, shall be subject to appropriation for the purpose of widening or relocating then existing public highways, streets or alleys and other structures and improvements incident thereto; and for such purpose said lands shall be subject to the exercise of the right of eminent domain by the municipal corporation in which such lands are located, by the board of county commissioners of the county in which such lands are located, or by the director of highways under the same conditions and in the same manner as any private party.

"Such appropriation proceedings shall be made in the manner provided for in Sections 163.01 to 163.22, inclusive, of the Revised Code, or, if by the director of highways, as otherwise provided by law."

(The balance of this code section is inapplicable to the issues in this case.) (Emphasis by the court.)

The defendant maintains first that Section 1721.01, Revised Code, is unconstitutional. And, secondly, that even if it is constitutional, the plantiff does not come within the purview of the statute.

Bypassing the constitutional question for the moment, I would like to consider the application of Section 1721.01, Revised Code. The first paragraph would seem to entirely (exempt) from appropriation up to six hundred forty acres of land if:

1. The land was held exclusively for cemetery or burial purposes. And, 2., with no view to profit.

If this were all of the statute it would clearly apply to the plaintiff. The plaintiff is a nonprofit cemetery association and while having itself the power to appropriate property, it purchased the instant tract in the form of a rectangle and containing 76 acres.

It is bounded on the east by Olentangy River Road and on the north by lands of Riverside Hospital. On the west, by the railroad tracks of the Chesapeake and Ohio Railroad. And, on the south by a housing development. The only means of ingress and egress to plaintiff's property is from Olentangy River Road to which plaintiff has unlimited access. The front one third of the property contains approximately 6500 graves. There is no

other possible use of the remainder of this property except for cemetery purposes since the only access to the balance is through the area containing graves.

However, there is a second paragraph of the statute which constitutes an exception to the first paragraph. It states that a municipal corporation or the state highway director may appropriate lands of a cemetery for "widening or relocating then existing public highways—if the lands to be appropriated are within but contiguous to its boundary and not containing graves that are in use as such." It is admitted here that the lands to be taken do not contain graves as such, although, part of the freeway will be within approximately 200 feet from existing graves.

The remaining questions are then: 1. Is the highway a relocation of State Route 315? (It is obviously not a widening.) 2. If so, is the land "within but contiguous to the cemetery boundaries"?

Plaintiff claims that by creating a highway of four lanes and making the freeway limited access, it constitutes a completely new highway and that where before plaintiff had access to State Route 315, it will now have no access to the new road. And, therefore, old State Route 315 or Olentangy River Road will have to remain to give plaintiff any access to its property. If the present proposed highway was merely a relocation of State Route 315, would it not have the same attributes of old 315 which would then be abandoned? But here again, plaintiff will have no access to the new freeway so the change is certainly more than merely a relocation. The road, in effect, becomes an integral part of the Interstate Freeway System surrounding the city, although, technically, it will retain the number State Route 315.

Even conceding for the moment that this change can be considered a relocation, the land sought is certainly not contiguous to plaintiff's boundary. If this appropriation was contiguous to plaintiff's western boundary, I doubt if plaintiff would be in court. The great bulk of its property would still be usable for cemetery purposes. Frankly, the most logical highway location would be adjoining and adjacent to the C. & O. Railroad tracks. The highway would then cross the rear of Riverside Hospital lands which are practically vacant. The next tract of land is va-

cant of all use and the road, if necessary, could then run to Olentangy River Road from its detour around Ohio State University.

The word contiguous in the statute is unfortunate because it is capable of elastic interpretation.

The Attorney General's opinion in 1964, No. 939, merely restates the problem rather than clarifying it. Webster's Dictionary defines contiguous as follows:

"In actual contact; touching; also, near, though not in contact; adjoining."

Black's Legal Dictionary contains a somewhat similar definition, i. e., "In close proximity, adjoin, in actual close contact, touching, bounded or traversed by."

The term "contiguous" has caused some confusion in the application of the law of eminent domain as it relates to damages to the residue. In this respect, the courts have considered contiguous as meaning adjoining and at one time, held that damage could not be allowed to residue or remaining property that was not contiguous to the part taken. This definition created a hardship on property owners where land was perhaps divided by a railroad or highway and not contiguous but was used for the same purpose as the whole tract. Therefore, the concept of "Unity of Use" developed to take care of such a situation. This illustration is used only to point out that the word contiguous as used in eminent domain law means adjoining or touching property.

What did the Legislature intend the word to mean when Section 10093, General Code, was amended in 1951 to include the word "contiguous".

That amendment also broadened appropriating power of the governmental agencies by not limiting it to widening of highways but including the relocation of highways if the land taken was contiguous to the boundary of the cemetery. Therefore, the word contiguous was intended as a limitation on the right to relocate. Certainly, the "bisecting" of cemetery lands by the appropriating authority cannot by any stretch of the imagination be considered as contiguous to the cemetery boundaries. Otherwise, the word as used in the statute would be meaningless. In this case, the proposed Freeway not only bisects the property but leaves 22 acres at the rear land locked and with no access whatsoever. A highway which is separated

from plaintiff's boundaries by 22 acres certainly cannot be considered as contiguous. Therefore, the court finds as to this issue that the proposed alignment of new State Route 315 does not fall within the exception stated in Section 1721.01, Revised Code, and therefore the defendants have no right to appropriate this part of plaintiff's property.

The defendants say, however, that Section 1721.01, Revised Code, even if applicable, is unconstitutional as it interferes with their right of eminent domain as granted by the Ohio Constitution.

The general governmental right of eminent domain originates in Article I, Section 19 of the Ohio Constitution which reads in essence as follows:

"Private property shall ever be held inviolate but subservient to the public welfare."

This article is in the Bill of Rights Section of the Constitution. The earlier cases clearly establish that this constitutional provision is not self-executing and the power of execution passes to the Legislature under Article II, Section 1. Certainly, the Legislature has the right to delegate this constitutional authority to various agencies and it is to be noted that the Union Cemetery Association, like the defendants, has been delegated power of eminent domain. The Legislature had further granted this power to the director of highways but, certainly, has the right to restrict this delegation of power and prescribe the manner in which it can be exercised.

The legislative power to grant the right of eminent domain for the public welfare must also necessarily include the power to exempt for the public welfare and the Legislature has the right to determine what is and is not public welfare. Therefore, the contention of the defendant Director of Highways that the statute is unconstitutional as applied to him is without merit.

There remains the contention of the city that because of the Constitution, Article XVIII, Section 3, the Legislature cannot restrict its right of eminent domain. Section 3 of Article XVIII reads as follows:

"Municipalities shall have authority to exercise all powers of local self government and to adopt and enforce *within* their limits such *local* police, sanitary and other similar regulations, as are *not in conflict with general laws.*" (Emphasis by court.)

In the first place, the defendant city of Columbus is not the primary party in the construction of this freeway which is not purely local in nature but is contained both within and without the municipal boundary. Ordinance 144-66 is an ordinance consenting to state construction and supervision of the freeway and agreeing to participate in preliminary engineering construction and right of way cost in the amount of 25 per cent. The ordinance indicates that the state will do the acquiring of land primarily.

Aside from this fact, Section 3 of Article XVIII only gives local government such police, sanitary and other local regulations within their limits as are not in conflict with general laws. Certainly this constitutional grant gives the city no more right of eminent domain than is given to the state in Article I Section 19.

Is Section 1721.01, Revised Code, a general law which applies uniformly throughout the state and which affects the peace, health and safety of all of the people of the state? I believe it is. The sanctity and preservation of burial grounds has been a governmental concern from time immemorial. The instant case is the classic example of the necessity of the people through their legislators to protect this sanctity from unwarranted interference.

In addition, it is the opinion of this court, having heard several hundred eminent domain cases, that the Legislature intended the state to pre-empt the field as it applies to the construction of new interstate highways and freeways. Just one year ago the Legislature passed a uniform eminent domain act so that these sections of law and the procedure thereunder would be uniformly applied throughout the state. Note that I am not referring to the city's constitutional or inherent right of eminent domain concerning purely local problems such as city streets and sewers.

The freeway system throughout this state goes far beyond local municipal control and involves usually a relatively small financial consideration by the municipality. The state and even the national government has an overriding interest in seeing that the vast complex of state and national interstate systems are uniform in design, construction and so forth.

Therefore, cities cannot have the right to impose local regu-

lations upon the state and federal governments merely because the freeway happens to pass within the boundaries of the municipality. Neither do they have the right to restrict or enlarge the statute as it relates to eminent domain for these purposes. It must further be remembered that the nationwide interstate system is a relatively new activity within the last 15 years, and, therefore, some of the older cases and rules cannot be blindly followed without closely examining them in the light of present day problems.

I consider the 1849 case not to be applicable to the instant case. Even the Constitution has been changed twice since that case.

The case in 108 Ohio St. 243, involving the city of Perrysburg is a 1923 case, also, is not in point. This case was determined in 1923, not too many years after the adoption of the Constitution of 1912. It establishes the proposition that so far as control of local streets and so forth, the municipality obtains its authority not by statutes but by Article XVIII, Section 3 of the Constitution.

This court can agree completely with this case on its facts but it does not answer the instant issue. The other case cited was *State, ex rel. Bruestle,* v. *Rich,* decided in 1953. The question involved in that case was whether the urban renewal project may properly be implemented by eminent domain. And, the court held that this was a proper expenditure of public funds. The issue in the case was purely a local one and I certainly agree with the conclusion of the court in that case but, again, the case is not in point.

The fact is this court cannot find a case since 1951 which interprets Section 1721.01, Revised Code. Certainly the nearest situation was the *Poland case* in which the court held that Section 10093, General Code, did apply and enjoined the highway from crossing the cemetery. This resulted in the Legislature amending the statute which later became Section 1721.01, Revised Code. And, this court humbly suggests that this is the solution for the defendants in this case. If the Legislature sees fit to give an appropriating agency the power to take any cemetery property, so be it.

Aside from the legal aspects of the case as discussed above, the court has visited the scene of this proposed appropriation

and having studied the terrain itself as well as the maps and plans, confesses that the proposed route of the new freeway defies logic, and, in fact, looks "as crooked as a dog's hind leg."

The court is loath to say that the alignment is an attempt to placate the various interest groups but the conclusion is inescapable. The alignment is obviously not the straightest and most practical route and the bisecting of plaintiff's cemetery property in the manner proposed is completely unnecessary. The court believes that taxpayers are entitled to freeways which are aligned and constructed free from any consideration other than those arising from the project itself.

For the foregoing reasons, the court in summary finds as follows:

Number one, Section 1721.01, Revised Code, is constitutional both as it applies to the state highway department and to the city of Columbus.

Number two, that the proposed alignment of State Route 315 is in violation of Section 1721.01, Revised Code, and will cause irreparable harm to the plaintiff.

Therefore, the defendants will be enjoined as prayed for in the petition and an entry may be drawn accordingly.